B104 (FORM 104) (08/07)  EDVA

## ADVERSARY PROCEEDING COVER SHEET
(Instructions on Reverse)

**ADVERSARY PROCEEDING NUMBER**
(Court Use Only)

| **PLAINTIFFS** | **DEFENDANTS** |
|---|---|
| **ATTORNEYS** (Firm Name, Address, and Telephone No.) | **ATTORNEYS** (If Known) |
| **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee | **PARTY** (Check One Box Only)<br>☐ Debtor  ☐ U.S. Trustee/Bankruptcy Admin<br>☐ Creditor  ☐ Other<br>☐ Trustee |

**CAUSE OF ACTION** (WRITE A BRIEF STATEMENT OF CAUSE OF ACTION, INCLUDING ALL U.S. STATUTES INVOLVED)

### NATURE OF SUIT
(Number up to five (5) boxes starting with lead cause of action as 1, first alternative cause as 2, second alternative cause as 3, etc.)

**FRBP 7001(1) – Recovery of Money/Property**
☐ 11-Recovery of money/property - §542 turnover of property
☐ 12-Recovery of money/property - §547 preference
☐ 13-Recovery of money/property - §548 fraudulent transfer
☐ 14-Recovery of money/property - other

**FRBP 7001(2) – Validity, Priority or Extent of Lien**
☐ 21-Validity, priority or extent of lien or other interest in property

**FRBP 7001(3) – Approval of Sale of Property**
☐ 31-Approval of sale of property of estate and of a co-owner - §363(h)

**FRBP 7001(4) – Objection/Revocation of Discharge**
☐ 41-Objection / revocation of discharge - §727(c),(d),(e)

**FRBP 7001(5) – Revocation of Confirmation**
☐ 51-Revocation of confirmation

**FRBP 7001(6) – Dischargeability**
☐ 66-Dischargeability - §523(a)(1),(14),(14A) priority tax claims
☐ 62-Dischargeability - §523(a)(2), false pretenses, false representation, actual fraud
☐ 67-Dischargeability - §523(a)(4), fraud as fiduciary, embezzlement, larceny

**(continued next column)**

**FRBP 7001(6) – Dischargeability (continued)**
☐ 61-Dischargeability - §523(a)(5), domestic support
☐ 68-Dischargeability - §523(a)(6), willful and malicious injury
☐ 63-Dischargeability - §523(a)(8), student loan
☐ 64-Dischargeability - §523(a)(15), divorce or separation obligation (other than domestic support)
☐ 65-Dischargeability - other

**FRBP 7001(7) – Injunctive Relief**
☐ 71-Injunctive relief – imposition of stay
☐ 72-Injunctive relief – other

**FRBP 7001(8) Subordination of Claim or Interest**
☐ 81-Subordination of claim or interest

**FRBP 7001(9) Declaratory Judgment**
☐ 91-Declaratory judgment

**FRBP 7001(10) Determination of Removed Action**
☐ 01-Determination of removed claim or cause

**Other**
☐ SS-SIPA Case – 15 U.S.C. §§78aaa *et.seq.*
☐ 02-Other (e.g. other actions that would have been brought in state court if unrelated to bankruptcy case)

| ☐ Check if this case involves a substantive issue of state law | ☐ Check if this is asserted to be a class action under FRCP 23 |
|---|---|
| ☐ Check if a jury trial is demanded in complaint | Demand $ |
| Other Relief Sought | |

| BANKRUPTCY CASE IN WHICH THIS ADVERSARY PROCEEDING ARISES | | | |
|---|---|---|---|
| NAME OF DEBTOR | | BANKRUPTCY CASE NO. | |
| DISTRICT IN WHICH CASE IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| RELATED ADVERSARY PROCEEDING (IF ANY) | | | |
| PLAINTIFF | DEFENDANT | | ADVERSARY PROCEEDING NO. |
| DISTRICT IN WHICH ADVERSARY IS PENDING | | DIVISION OFFICE | NAME OF JUDGE |
| SIGNATURE OF ATTORNEY (OR PLAINTIFF) | | | |
| DATE | | PRINT NAME OF ATTORNEY (OR PLAINTIFF) | |

## INSTRUCTIONS

The filing of a bankruptcy case creates an "estate" under the jurisdiction of the bankruptcy court which consists of all of the property of the debtor, wherever that property is located. Because the bankruptcy estate is so extensive and the jurisdiction of the court so broad, there may be lawsuits over the property or property rights of the estate. There also may be lawsuits concerning the debtor's discharge. If such a lawsuit is filed in a bankruptcy court, it is called an adversary proceeding.

A party filing an adversary proceeding must also complete and file Form 104, the Adversary Proceeding Cover Sheet, *unless the party files the adversary proceeding electronically through the court's Case Management/Electronic Case Filing system (CM/ECF). (CM/ECF captures the information on Form 104 as part of the filing process.) When completed, the cover sheet summarizes basic information on the adversary proceeding. The clerk of court needs the information to process the adversary proceeding and prepare required statistical reports on court activity.

The cover sheet and the information contained on it do not replace or supplement the filing and service of pleadings or other papers as required by law, the Bankruptcy Rules, or the local rules of court. The cover sheet, which is largely self-explanatory, must be completed by the plaintiff's attorney (or by the plaintiff if the plaintiff is not represented by an attorney). A separate cover sheet must be submitted to the clerk for each complaint filed.

**Plaintiffs** and **Defendants.** Give the names of the plaintiffs and defendants exactly as they appear on the complaint.

**Attorneys.** Give the names and addresses of the attorneys, if known.

**Party**. Check the most appropriate box in the first column for the plaintiffs and the second column for the defendants.

**Demand.** Enter the dollar amount being demanded in the complaint.

**Signature.** This cover sheet must be signed by the attorney of record in the box on the second page of the form. If the plaintiff is represented by a law firm, a member of the firm must sign. If the plaintiff is pro se, that is, not represented by an attorney, the plaintiff must sign.

*Per LBR 7003-1, in the EDVA, a properly completed Adversary Proceeding Cover Sheet is required.

**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF VIRGINIA**
**Richmond Division**

| | |
|---|---|
| IN RE: Lois A. Yankah | CASE NO.: 12-35627-DOT |
| Debtor. | Chapter 7 |

CLIFFORD J. MACK,
              Movant,

v.	Adv. Proc. No. _____

LOIS A. YANKAH,
              Defendant.

**COMPLAINT TO DETERMINE DISCHARGEABILITY**
**PURSUANT TO 11 U.S.C. 523(a)(2)(B)**

COMES NOW Clifford J. Mack (hereinafter "Mack" or "Movant"), by counsel, and pursuant to 11 U.S.C. § 523(a)(2)(B) and Federal Rule of Bankruptcy Procedure 7001, hereby requests this Court to disallow Debtor's discharge of funds owed to creditor Clifford J. Mack by reason of the following:

ROBERT A. CANFIELD, VSB#16901
CANFIELD, BAER & HELLER, LLP
2201 LIBBIE AVENUE, SUITE 200
RICHMOND, VA 23230
☎ 804-673-6600
🖷 804-673-6604
BCANFIELD@CANFIELDBAER.COM
*COUNSEL FOR CLIFFORD J. MACK*

1

## PARTIES AND JURISDICTION

1. This is a core proceeding concerning the administration of this estate pursuant to 28 U.S.C. § 157 and 28 U.S.C. §1334.

2. The Debtor is an individual residing in Virginia and the Debtor in this Chapter 7 bankruptcy case.

3. Movant is an individual residing in Virginia and is a creditor of the Debtor.

4. Venue is proper pursuant to 28 U.S.C. §§ 1408 and 1409.

## BACKGROUND

5. On May 18, 2012, Debtor submitted a signed and dated credit application (hereinafter the "Application") to Movant in order to lease an apartment owned by Movant, locate at 251 Rocketts Way #304, Richmond, Virginia 23231. Please see attached Exhibit A.

6. Debtor claimed on said Application that she had never been evicted, nor had she ever failed to pay rent on time.

7. Based upon these assertions, Movant entered into a residential lease (hereinafter the "Lease") with Debtor on May 21, 2012. Please see attached Exhibit B.

8. No rent payments were made by Debtor until August 19, 2012, when a partial payment was made. After this date, only one more partial payment was made by Debtor to Movant to date.

9. On September 27, 2012, Debtor Lois A. Yankah filed her Chapter 13 bankruptcy petition in the United States Bankruptcy Court, Eastern District, Richmond Division, and was assigned case number 12-35627-DOT.

10. On October 17, 2012, Mack filed in Debtor's bankruptcy case a Motion for Relief from Stay, asking that the Court grant him permission to evict Debtor from the real property located at 251 Rocketts Way #304, Richmond, Virginia 23231 that she was renting from him. Mack's Motion was granted and the Order Granting Relief was entered on December 17, 2012.

11. On April 10, 2013, Debtor converted her case to a Chapter 7 bankruptcy.

## CLAIM FOR RELIEF: OBJECTION TO DISCHARGEABILITY
## PURSUANT TO 11 U.S.C. § 523(a)(2)(B)

12. Movant incorporates all allegations contained above as if fully set forth herein.

13. 11 U.S.C. § 523(a)(2)(B) excepts from discharge any debt for money, property, or services to the extent obtained by false pretenses, a false representation, or actual fraud.

14. Debtor willfully and intentional used false pretenses and misrepresentation to obtain property from Movant and to induce him to enter into a lease agreement with her.

15. Debtor purposefully and knowingly lied on the Application, stating that she had never failed to pay rent in a timely manner and that she had never been evicted.

16. On Debtor's bankruptcy schedules, Debtor listed Willie Caplan (hereinafter "Caplan") as a creditor and listed the consideration for his claim as "Judgment."

17. Attached as Exhibit C, please find a "Residential Lease" between Debtor and Caplan for another unit in the same building that the apartment owned by Movant is located, dated June 17, 2011.

18. Attached as Exhibit D, please find the "Notice of Default for Failure to Pay Rent" issued to Debtor by Caplan on October 10, 2011. It states the Debtor had failed to pay three months rent.

3

19. Despite Debtor's failure to pay these rents in a timely manner, she stated in her Application to Movant that she had never failed to pay her rent on time, which was a fraudulent statement with intent to deceive Movant so that he would rent her an apartment.

20. Further, attached as <u>Exhibit E</u>, please find record of the Unlawful Detainer filed by Caplan in Order to evict Debtor from his real property.

21. Debtor lied on her Application, informing Movant that she had never been evicted in order to deceive him into entering into a lease agreement with her.

22. Debtor intentionally lied on her Credit Application about her past rental history in order to deceive Movant, in clear violation of 11 U.S.C. § 523(a)(2)(B).

23. As such, the monies owed to Movant by Debtor cannot be discharged.

WHEREFORE, Clifford J. Mack asks that this Court determine that the debt owed by Debtor to Clifford J. Mack is non-dischargeable, enter judgment against Debtor in favor of Clifford J. Mack, and for any further relief that this Court may deem necessary and appropriate under the law.

CLIFFORD J. MACK

By:   /s/ Robert A. Canfield
       Counsel

Robert A. Canfield, VSB#16901
Canfield, Baer & Heller, LLP
2201 Libbie Avenue, Suite 200
Richmond, VA 23230
☎ 804-673-6600
🖷 804-673-6604
bcanfield@canfieldbaer.com
*Counsel for Clifford J. Mack*

## CERTIFICATE OF SERVICE

   I hereby certify that on this 16th day of September, 2013, a copy of the foregoing Complaint was either electronically transmitted and/or mailed by regular mail, postage prepaid to all necessary parties, as listed below:

**Lois A. Yankah**
P. O. Box 85
Richmond, VA 23218
lois2817@yahoo.com

**Bruce H. Matson**
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
P.O. Box 2499
Richmond, VA 23218-2499

            /s/ Robert A. Canfield
            Robert A. Canfield

APPLICATION TO RENT  Rockitte Landing Condo
NAME OF APPLICANT  Lois Yankoh

Date of Birth 08/16/1984  Social Security # _____

CURRENT ADDRESS  600 N 10TH ST Richmond VA 23298

Home Phone: _____  Work # _____  Cell # 804-551-4940

DATES at this ADDRESS:  From 2011  To present

PRESENT LANDLORD  MCV Housing
Name
600 N 10TH ST Richmond VA 23298
Address
804-828-0525   $1200
Phone #              Amount of Rent Paid

PREVIOUS ADDRESS _____

DATES at this ADDRESS: From _____ To _____

PREVIOUS LANDLORD
Name _____
Address _____
Phone # _____  $ _____ Amount of Rent Paid

CHECKING ACCOUNT _____

SAVINGS ACCOUNT _____

Current EMPLOYER National Radiation Oncology program  SUPERVISOR Dr. Michael Hagan
Address 1281 Broad Rock Blvd   Phone # 804-675-5923
Position Research    Income NIH Grants

If Less Than a Year  Dept Cardiothoracic surgery
Current EMPLOYER VCV Health System CONTACT Dr. Vigneshwar Kasirajan
ADDRESS 1250 East Marshall St   PHONE # 804-828-9000
Richmond Va 23298

Page 1 of 2

PLAINTIFF'S EXHIBIT A

Applies

REFERENCE Dr. Napolion Peoples, Dean MCV student
804-828-1079

Who else will occupy the premises? N/A

Relative to contact in the event of emergency — Name Angelina Kresser

Address 276 Old Elm Dr. Bolingbrook IL 60440

Phone no. 630-312-8233

CAR _____
       Make / Model/ Color/ License Plate Number

NO PETS WITHOUT EXPRESSED CONSENT OF LESSOR

TENANT'S INSURANCE POLICY

ACKNOWLEDGE RECEIPT OF LEAD BASE PAINT DISCLOSURE

Have you ever been evicted? No

Have you failed to pay rent on time? No

ALL ABOVE INFORMATION IS TRUE AND CORRECT.

I/we AUTHORIZE YOU TO CONDUCT AN EMPLOYMENT, RESIDENTIAL HISTORY, INCOME VERIFICATION, CREDIT HISTORY, AND CRIMINAL BACKGROUND INVESTIGATION.

Applicant Signature _____  Date 5/18/12

# Dwelling LEASE

This Deed of Lease, made this 21st day of May, 2012, between Clifford Mack, herein called Lessor, and Lois Yankah, herein called Lessee, and Graham Johnson with Coldwell Banker Johnson _____, Agent;

## WITNESSETH

THAT IN CONSIDERATION of the premises, rents and covenants herein expressed, Lessor hereby leases to Lessee and Lessee rents from Lessor, upon the terms and conditions herein set forth, that certain property known as Apartment Dwelling No. #304 251 Rocketts Way, Richmond, Virginia, for the term commencing at 12 noon, June 1st, 2012, and ending at 12 noon May 31st, 2013, for the total sum of $1,155.00, payable as follows: the first installment of $1,155.00 covering the period June 1st, 2012, through June 30th, 2013, before occupying the premises and subsequent installments of $1,155.00 on the first day of each calendar month thereafter without notice, demand or deduction to Lessor/owner Agent at 4634 Aspen Hill Ct. Annadale, VA 22003, who is authorized by Lessor to manage the property and to act for and on behalf of Lessor for the purposes of service of process and receiving and receipting for notices and demands.

**Late Fees And Other Charges**

1. If any installment of rent is not received by Agent within 5 days from the due date, Lessee covenants and agrees to pay as additional rent the sum of $100.00. Lessee further agrees to pay Agent a handling charge of $35.00 for each check returned by the bank for insufficient funds or any other reason. In the event Lessee subleases or assigns this Lease with approval of Lessor, Lessee shall pay Agent a fee of $50. Lessee shall also reimburse Lessor for all costs (including but not limited to the cost of serving legal notices and attorney's fees) allowed by law incurred in collecting overdue rent.

**Security Deposit**

2. Lessee has paid or before occupying the premises agrees to pay the sum of $1,165.00 as security for the faithful performance by Lessee of his obligations hereunder. In the event of any breach or failure of Lessee hereunder, then Lessor shall have the right to use and apply the said security in the manner provided and permitted by law. Within seventy-two (72) hours following termination of the tenancy, Lessor or his Agent shall make a final inspection of the premises. If Lessee has faithfully performed his obligations hereunder, paid all rent and other charges due Lessor, returned all keys and left premises (including all fixtures, facilities and appliances) in the same condition as when premises were occupied except for reasonable wear and tear and normal depreciation, then Lessor shall within thirty (30) days after the termination of tenancy and delivery of possession of premises return the amount of the security to Lessee with such interest as required by law. If Lessor has made any deductions from security deposit or accrued interest as permitted by law, all of said deductions shall be fully itemized in writing to Lessee within thirty (30) days of termination of tenancy. No part of said security or any accrued interest as required by law shall be applied by Lessee for payment of any part of the rent or other obligations due hereunder and Lessee shall pay rent required each month as though no security were ever made. If the property is sold by Lessor during the term of this Lease or any continuation of such term, Lessee, upon notification of the sale, consents to the transfer of such security deposit, plus any accrued interest required by law, to the purchaser of the property.

**Notice Required To Terminate**

3. Unless terminated by either Lessee or Lessor by written notice at least 60 days prior to the end of the term as hereinabove set forth, this Lease shall continue thereafter, upon the same terms and conditions and at the same rent, for successive renewal terms of 12 months each until prior to the end of any such renewal term, either of said parties has given the other at least _____ days' written notice to terminate. The Agent is authorized to give or receive such notices for the Lessor.

**Lessor's Obligations**

4(a). Lessor shall under this Lease provide the following fixtures and appliances: Stove, Stack Washer/Dryer, dishwasher

4(b). Lessor shall, except in case of emergency or events beyond his control, provide Lessee the following utilities: Association fees - no utilities

4(c). Lessor shall make all repairs to the premises required by normal wear and tear, fire, the elements or other casualty not caused by the negligence of Lessee, his agents or invitees, and shall comply with the requirements of all applicable building and housing codes materially affecting health and safety.

4(d). Lessor shall keep all common areas in a clean and safe condition.

4(e). Lessor shall provide appropriate receptacles in common areas for the collection, storage and removal of garbage, rubbish and other waste and arrange for the removal of same.

**Lessee's Obligations**

5(a). Lessee shall use the premises only as a dwelling unit and in such a way so as not to disturb his neighbors or damage their property.

5(b). Lessee shall comply with all obligations primarily imposed upon Tenants by applicable provisions of building and housing codes materially affecting health and safety.

PLAINTIFF'S EXHIBIT B

5(c). Lessee shall keep that part of the premises that he occupies and uses, including all plumbing fixtures, facilities and appliances in the dwelling unit, as clean and safe as their condition permits; and shall unstop and keep clear all waste pipes thereon.

5(d). Lessee shall use in a reasonable manner all electrical, plumbing, sanitary, heating, ventilating, air conditioning, and other fixtures, facilities and appliances in the premises, and Lessee shall be responsible for any damage caused by his failure to comply with this requirement.

5(e). Lessee shall not deliberately or negligently destroy, deface, damage, impair or remove any part of the premises (including fixtures, facilities and appliances) or permit any person to do so whether known by the Lessee or not, and Lessee shall be responsible for any damage caused by his failure to comply with this requirement. Lessee shall give the Agent prompt notice of any such damage to the premises.

5(f). Lessee shall conduct himself and require other persons on the premises with his consent whether known by the Lessee or not to conduct themselves in a manner that will not disturb his neighbors' peaceful enjoyment of the premises.

5(g). Lessee shall, if he installs for his safety new burglary prevention and fire detection devices, provide Lessor with a duplicate of all keys and instructions on how to operate all devices and shall upon termination of tenancy if requested by Lessor, remove all such devices and repair all damages.

5(h). Lessee shall not, except for 5(g) above, make any alterations, additions or improvements without first obtaining Lessor's written consent and such shall, at the option of Lessor, remain with the property or be removed by Lessee and premises returned to original condition at the expense of Lessee.

5(i). Lessee shall protect by insurance or otherwise against injury or damage from whatever cause to his person or property and to the person or property of those on the premises with his consent, and Lessee shall indemnify and hold Lessor harmless from all claims arising from any such injury or damage. (Nothing herein shall be construed to relieve Lessor of any of his liability to Lessee arising under law.)

**Rules and Regulations**

6(a). Lessee shall abide by all existing rules and regulations and other rules and regulations that may be imposed from time to time by Lessor or Agent. Lessee has read all existing rules and regulations, a copy of which is attached hereto and made a part hereof.

6(b). A violation of the rules and regulations imposed by the Lessor or Agent shall be considered a breach of this Lease for which the Lessor shall be entitled to appropriate relief.

**Rental Application**

7. The Rental Application submitted by Lessee has been an inducement for Lessor to rent the premises to Lessee. If any material facts in the Rental Application are untrue or if the premises are occupied by anyone other than Lessee and his family as stated in the Rental Application, Lessor shall have the right to terminate this Lease, to hold Lessee liable for any damage to the premises, to avail himself of all rights and remedies to which he may be entitled either at law or in equity, and to recover reasonable attorney's fees and costs as allowed by law.

**Subleasing**

8. Lessee shall not assign this Lease nor sublease the premises or any part thereof without the written consent of Lessor, which consent may be subject to whatever reasonable conditions Lessor may choose to impose. Any sublease approved by Lessor shall not in any way relieve Lessee from the obligations contained in this agreement.

**Delivery of Possession**

9(a). In the event that Lessor is unable to deliver possession of the premises at the commencement of the tenancy, then Lessor agrees to use whatever efforts are in its determination reasonable to secure possession of the premises for Lessee, including the recovery of possession as against a former occupant wrongfully holding over, but in no event, except for the willful and deliberate conduct of Lessor, shall Lessor be liable to Lessee for any delay in possession. Notwithstanding the provisions of the foregoing sentence, Lessee shall have no responsibility to pay rent for the time elapsing from the beginning of the term of this Lease until the premises are available for occupancy by Lessee.

**New Construction**

9(b). Notwithstanding the provisions of 9(a) above, if this Lease Agreement is made prior to the construction or completion of the apartment or other dwelling unit constituting the premises and the same shall not be ready for occupancy on the commencement date specified herein, then in those events, the said commencement date shall be construed to mean the date as of which the premises are ready for occupancy and Lessor has notified Lessee thereof. In that event, the first rental payment shall be prorated from the date that premises are ready for occupancy and Lessee has previously been notified thereof. A change in occupancy date shall not change the termination date of this agreement as set forth herein.

**Special Termination**

9(c). If under either (a) or (b) above, the premises are not available for occupancy by Lessee within _____ days after the commencement of the term hereof, then either Lessor or Lessee may terminate this Lease without further responsibility of one to the other upon five (5) days' written notice to the other.

**Record of Condition**

10. Lessor shall within five (5) days of Lessee's taking occupancy submit Lessee a statement of condition of the premises itemizing any damages existing. This record shall be deemed to be correct unless Lessee objects in writing within five (5) days after receipt thereof.

**Storerooms, Laundry Room Or Equipment**

11. Lessee understands and agrees that all storerooms, storage areas or laundry rooms or laundry equipment which may be provided are for the benefit and accommodation of Lessee and any articles of property placed or stored therein shall be at Lessee's sole risk and Lessor undertakes in no respect to provide or protect against the loss or damage to any property placed or stored therein.

**Lessor's Right to Assign**

12. This Lease shall be subordinate to the lien of existing and future mortgages placed on the premises, and Lessee agrees to execute whatever additional agreements are required to so subordinate this Lease. Lessor shall have the right to assign any of his rights under this agreement at any time.

| | |
|---|---|
| Eminent Domain | 13. Lessor shall have the right to terminate this lease if the premises, or any part thereof, are condemned or sold in lieu of condemnation. |
| Access by Lessor or Designated Representative | 14. Upon reasonable notice to Lessee and at reasonable times, Lessor, Agent and their duly designated representative may enter the premises in order to (a) inspect the property, (b) make the necessary or agreed repairs, decorations, alterations or improvements, (c) supply necessary or agreed services, (d) exhibit the property to prospective or actual purchasers, mortgagees, workmen or contractors, (e) place "for sale" signs on the property and (f) after notice of termination of this Lease by either party, place "for rent" signs on the property and exhibit to prospective or actual Lessees. In case of an emergency, Lessor, Agent or their designated representative may enter the dwelling unit without consent of Lessee. During the last ten (10) days of this Lease or any renewal period, if the premises have been vacated, Lessor or Agent shall have access to the premises in order to make repairs or decorate for an incoming tenant. |
| Default | 15. If Lessee violates any of the provisions of this Lease or any of the rules and regulations imposed by Lessor or the Agent, or if any bankruptcy or insolvency proceedings are filed by or against Lessee (or a receiver or trustee is appointed for his property), or if the premises are vacated or abandoned, Lessor shall be entitled to avail himself of all rights and remedies to which he may be entitled, either at law or in equity (including, but not limited to, the right to terminate this Lease and recover possession) and Lessor shall be also entitled to recover reasonable attorney's fees and costs as allowed by law. Lessor's waiver of one default by Lessee shall not be considered to be a waiver of any subsequent default. Lessee waives the benefit of any exemption under the homestead, bankruptcy, and any other insolvency law as to his obligations in this Lease. |
| Statutes | 16. The rights and responsibilities of the persons signing this Lease are governed by the Virginia Residential Landlord and Tenant Act (Chapter 13.2, Title 55 of the Code of Virginia), and to the extent any provision of this Lease is in conflict with the Virginia Residential Landlord and Tenant Act, the provisions of the Act will control. |
| Rental Fee | 17. Lessor has agreed and does hereby agree that in consideration of Agent's services rendered in procuring this Lease and in consideration of Agent's services, Lessor will pay Agent a commission of _____ per centum per month of the rental received from Lessee during the term of this Lease and during any renewal and extension thereof or during the term of any new lease respecting the premises between Lessor and Lessee. No sale, transfer or assignment by Lessor shall affect Agent's right to receive commissions, provided that in the event Lessor sells the premises, then upon Lessor's furnishing Agent with an agreement signed by the purchaser assuming Lessor's obligations to the Agent under this Lease, Agent will release the original Lessor from any further obligations to Agent hereunder. Agent is a party to this lease solely for the purpose of enforcing its rights under this paragraph, and it is understood by all parties hereto that Agent is acting solely in the capacity as Agent for Lessor. Lessee agrees to look exclusively to Lessor with respect to the covenants and agreements to be performed by Lessor hereunder. |
| Commission on Sale or Exchange | 18. In consideration of the negotiation of this Lease and the handling or management of the property by Agent, Lessor agrees to pay Agent a cash fee of _____ of the gross sale or exchange price of the property if within 90 days after expiration of the Lease, Lessor shall sell the property to Lessee or exchange it with Lessee for other property of any kind and wherever located. |

19. No pets
20. No smoking
21. Lessor agrees to pay Coldwell Banker Johnson and Thomas a one time fee of $828.00. Due after Lessor receives security deposit and 1st rent.
22. New tenant must contact the management office and arrange a move in date to avoid paying a fine.

THIS AGREEMENT is the entire agreement between the parties, and no modification or addition to it shall be binding unless signed by the parties hereto. The covenants, conditions and agreements contained herein are binding upon and shall inure to the benefit of the parties hereto and their respective heirs, executors, administrators, personal representatives, successors and assigns. Lessees signing this Agreement shall be jointly and severally liable. Wherever the context so requires, the singular number shall include the plural, the plural the singular, and the use of any gender shall include all other genders.

23. Lessee to send agent a copy of their social security card as soon as it is received.

WITNESS the following signatures and seals:

_____(SEAL)        _____(SEAL)
         Lessee                                        Lessor

_____(SEAL)        _____(SEAL)
         Lessee                                        Lessor

_____(SEAL)        _____, Agent
         Lessee

                                      By _____(SEAL)

*Emerald to Lois. 7/1/11*   YANKAH LA eve edge

SS# 696011935

## RESIDENTIAL LEASE

1. **PARTIES.**

Landlord:
   Name: WILLIAM A CAPLAN
   Address: 2604 N PARHAM
            Richmond VA 23294

Tenants: LOIS A YANKAH          Guarantors:

2. **LEASE & PREMISES.** Landlord hereby leases to Tenants and Tenants hereby lease from Landlord the premises located at 251 Rocketts Way #208, Richmond VA 23231.

3. **APPLICABLE LAW.** This lease shall be governed by the Virginia Residential Landlord and Tenant Act (Virginia Code Title 55, Chapter 13.2). Tenants are advised to read the Act as well as Virginia Code Title 55, Chapter 13, before signing this lease.

4. **TERM.** The lease shall run from July 01, 2011, through June 30, 20 12. Either party may terminate this Lease upon expiration of such initial term by giving the other written notice at least sixty (60) days before such expiration date. If no notice is given this Lease will continue for additional terms of twelve (12) months each until terminated by the giving of written notice by either party at least sixty (60) days before expiration of current term.

5. **RENT.** Tenants shall pay a total rent for the term of $ 12,750, payable in installments as follows:
   First month's ~~partial~~ rent: $ 1050, due on the start date of the lease;
   Eleven months' full rent: $ 525, due the first of each month;
   Last month's ~~partial~~ rent: $ 1075, due the first of the last month.

Unless otherwise notified in writing, Tenants shall pay rent and all other charges to Landlord at the address above. Checks and money orders shall be made payable to Landlord until otherwise notified in writing.

Tenants may pay by hand delivery or mail. Tenants may pay with more than one check or money order, but all payments shall be delivered at the same time and, if mailed, delivered together in one envelope. Breach of this requirement shall result in Tenants owing liquidated damages of $5 for each additional


PLAINTIFF'S EXHIBIT C

payment as compensation for the extra handling expenses. Each check or money order shall include the address of the premises. If payment is mailed, Tenants shall assume the risk that the payment may be lost in the mail and that they may be required to remit another payment in the event that the first payment does not reach Landlord or the Landlord's designated agent. Landlord shall consider rent received by mail as having been timely paid as long as it is post-marked by the due date.

6. **LATE FEE.** Tenants shall pay a late fee of 10% of any rental amount not received at the payment address by 5:00 pm on the fourth day after the date the rent is due. (If rent is due on the first, a late fee will be assessed if rent isn't received by 5:00 pm on the fifth.)

7. **DISHONORED CHECKS.** If a check paid by, or on behalf of, a Tenant is returned for insufficient funds or for any other reason not the fault of Landlord or Landlord's agent, Landlord may require rent payments to be made by cash, money order, cashier's check, or certified check. Tenants shall pay a service charge of $25.00 for each such returned check. This service charge is in addition to any applicable late fee that is charged.

[handwritten: 500 - Aug 1, 2011 / 500 - Sept 1, 2011]

8. **SECURITY DEPOSIT.** Landlord acknowledges that he has received the sum of $_____ from Tenants as a security deposit. (This includes any deposit required for pets.) Landlord may deduct from the security deposit the amount of damages incurred by him due to Tenants' breach of this lease. Tenants are not entitled to have the security deposit applied to unpaid rent or late fees.

Upon termination of the tenancy, Tenants shall surrender the premises in good repair and condition, reasonable wear and tear excepted. Tenants shall pay all reasonable repair and cleaning costs for any damages and conditions beyond reasonable wear and tear caused by Tenants or Tenants' guests.

After termination of the tenancy and delivery of possession (including return of all keys), Landlord shall process the security deposit and provide each Tenant an itemized list of security deposit deductions as required by law. (The VRLTA normally requires the security deposit to be returned within 45 days.) Landlord shall also provide each Tenant copies of all bills used to calculate the security deposit deductions.

Tenants shall provide Landlord written notice of their forwarding addresses on or before termination of the tenancy. Landlord shall mail pro rata shares of the deposit and interest (if any) plus the required documentation to the forwarding addresses. If no forwarding address is provided by a tenant, Landlord shall use the address of the leased premises. (In this case, the tenant should make sure that the Post Office has a forwarding address on file.)

9. **MOVE-IN CONDITION.** Landlord shall provide the first Tenant to take possession of the premises with a "Move-In/Move-Out Condition Report" form. That Tenant shall complete the form and return it to Landlord within five days. Unless Landlord objects within five days of his receipt of the completed form, the report shall be deemed conclusive evidence that the premises are as described in the report.

Landlord shall deliver the premises and all common areas to the Tenants in a clean, safe, and habitable condition, free of rodent and insect pests, free of visible mold, and with all smoke detectors, utilities, and appliances in proper working condition.

**10. DELIVERY OF POSSESSION.** Landlord shall be ready to deliver possession of the premises to Tenants at the start date of the tenancy. Landlord shall be responsible for having hold-over tenants evicted.

If Landlord fails to deliver possession and such failure is willful, Tenant's remedies shall be in accordance with law.

If Landlord fails to deliver possession and such failure is not willful, Landlord shall have ten days to remedy the situation and deliver possession. Rent shall abate until Landlord delivers possession, but Landlord shall not be responsible for any other damages to Tenants. If Landlord fails to deliver possession by the end of the ten-day period, Tenants may, at any time before possession is delivered, send Landlord written notice of termination, and the lease shall thereby be immediately terminated. Within five days of delivery of the termination notice, Landlord shall return all prepaid rent, application fees, and deposits.

**11. SUBLEASES & ASSIGNMENTS.** Tenants shall not sublease the premises or assign this lease without the prior, written permission of the Landlord. Landlord shall not permit a sublease or assignment without the approval of all Tenants. Landlord shall not unreasonably deny permission to sublease or assign. Landlord may charge a $32 application fee for each sublease or assignment requested and an additional $50 administrative fee for each executed sublease or assignment.

**12. USE OF PREMISES.** Only Tenants and Tenants' minor children are allowed to occupy the premises. Tenants shall not permit any other persons to occupy the premises. "Occupy" is defined as residing, living, or staying on the premises overnight for more than seven nights in a row or for more than fourteen nights in a twelve-month period.

Tenants shall use the premises only as a residential dwelling. Tenants shall not use the premises or permit any guests to use the premises for any unlawful activities or to unreasonably interfere with the rights, comforts, or conveniences of their neighbors or other Tenants. Tenants shall not host any party or gathering of more than fifteen (15) people at any time.

**13. LANDLORD'S RULES.** Tenants acknowledge receipt of Landlord's Rules. Tenants shall comply with all written Rules provided to the Tenant. Landlord may, with reasonable written notice to Tenants, modify these rules as allowed by law.

**14. LOCKS, KEYS, & PEEPHOLES.** Even if no local ordinance requires it, Landlord shall provide locks, locking devices, and peepholes that comply with subsections 1, 2, and 3 of Virginia Code section 55-248.13:1. If Landlord fails to comply and Tenants provide fifteen days written notice of the non-compliance to Landlord, Tenants may have such devices installed by a professional at a reasonable cost and deduct such cost from the next month's rent. Tenant shall provide Landlord a copy of each related

bill and a copy of each key. Tenants shall not install any other locks on the premises. Once installed, Tenants may not remove the locks and Landlord shall not require Tenants to pay for removal.

Landlord shall issue to each Tenant one set of keys to the premises and mailbox. Upon Tenants' surrender of the premises to Landlord, each Tenant shall return to Landlord all keys associated with the premises, whether they are originals or copies. If Tenants fail to return all keys, Tenants shall pay the cost of making replacement copies or replacing the locks, at Landlord's option.

Tenants shall not change any locks on the premises without the prior written permission of Landlord, which shall not be unreasonably denied. If Landlord does not give written permission or a written reason for denying permission within fifteen days of receiving Tenants written request to change the locks, permission shall be deemed as having been given by the Landlord. If the locks are changed, Tenants shall immediately provide Landlord at least one original key for each changed lock. All keys and hardware associated with the old lock shall be given to Landlord unless Landlord requires, in his written permission to change the locks, that the locks be returned to their original keying.

**15. ATTORNEY'S FEES AND LITIGATION.** If any party to this lease takes legal action against the other for breach of this lease, the prevailing party shall be entitled to a reasonable attorney's fee, in addition to any amounts awarded by the court for damages and court costs.

**16. RESERVATION OF RIGHTS.** If rent is unpaid when due and Tenants fail to pay rent within five days after written notice of the non-payment is provided, Landlord may terminate the lease and proceed to obtain possession of the premises in accordance with law. Acceptance of rent after the five-day period shall not act as a waiver of Landlord's rights and Landlord hereby reserves all rights to receive payment of rent after the five-day notice and proceed in court for possession of the premises and all other remedies allowed by law.

**17. PROPERTY DAMAGE & MAINTENANCE.** Tenants shall promptly notify Landlord of any defects in or damages to the plumbing, sanitary, electrical, gas, heating, or cooling systems as well as any leaks in the roof or evidence of structural damage. Tenants shall not repair these defects or damages without obtaining the prior, written permission of Landlord, which Landlord may reasonably refuse; however, Tenants shall take reasonable steps to prevent additional damage.

Tenants shall pay Landlord's reasonable expenses for repairing damages caused by Tenants, occupants, and guests, reasonable wear and tear excepted. For repairs made and billed during the lease term, Landlord shall provide Tenants a written, itemized bill with copies of receipts for materials purchased by Landlord and/or contractor invoices billed to Landlord. Landlord shall not charge a late fee or deduct the bill from the security deposit, unless Tenants fail to pay within fifteen days after presentment of the Landlord's bill and other required documentation.

Tenants shall ensure the lawn is mowed at least once every two weeks during April through September and in no case shall Tenants allow grass and weeds to exceed six inches in height at any time during the year. Landlord shall be responsible for all other yard maintenance and for having the gutters cleaned.

Tenants shall replace the central air and heat filters every month (or every three months if three-month filters are used).

**18. NO ALTERATIONS OF THE PREMISES.** Tenants shall not alter or permit any alteration of the premises. Alterations include, but aren't limited to, painting, wallpapering, structural changes, and addition or removal of fixtures (including TV antennae or satellite dish receivers). This clause pertains to any alterations made inside AND outside the premises, including changes to the surrounding land or common areas. Landlord shall not unreasonably withhold consent in the event Tenants wish to re-paint or re-wallpaper the residence, but Landlord may condition such approval on the agreement of Tenants to use specific colors or wallpaper or to restore the premises to its original condition upon the expiration or termination of the lease. The use of a reasonable number of small, picture-hanger nails shall not be considered alterations.

**19. DEATH.** If a Tenant dies during the tenancy, the surviving Tenants together with the executor or administrator of the decedent's estate, may jointly terminate this lease by giving forty-five days written notice of termination to Landlord. Termination under this clause does not relieve the surviving Tenants or the deceased's estate from their liability to pay all rent and charges owed through the date that Landlord is put in possession of the premises. However, if the Landlord, within fifteen days of receiving the termination notice, provides the surviving Tenants a notice that he wishes to continue the lease at reduced rent, the lease shall not be terminated but shall continue at a rental rate reduced by the deceased Tenant's pro-rata share of the rent. In this case, Landlord shall return the deceased Tenant's share of the security deposit to the executor or administrator of decedent's estate within 45 days of the decision to continue the lease.

**20. EXTENDED ABSENCES & ABANDONMENT.** If all of the Tenants will be absent from the premises for a period in excess of ten (10) days, Tenants shall give Landlord advance, written notice of the absence.

**21. MOVE-OUT INSPECTION.** Tenants may request to be at a move-out inspection to be held within seventy-two (72) hours of Tenants' delivery of possession to Landlord. Tenants' request shall made in writing at least two weeks in advance.

**22. UTILITIES.** Landlord shall provide _NONE_ without charge. Tenants shall not use these utilities in a wasteful manner. All other utilities are the responsibility of Tenants. Tenants shall have _ALL utilities_ placed in the name(s) of one or more Tenants from the start of the tenancy until possession of the premises is returned to Landlord. Tenants shall ensure that the heat is maintained at a temperature sufficient to prevent freezing of pipes during cold periods.

**23. RENTER'S INSURANCE.** Landlord is not responsible for damages to Tenants' property unless caused by Landlord. Tenants are advised to obtain sufficient renter's insurance to cover the loss of their property along with sufficient liability coverage to cover accidental damage to Landlord's or neighbors' property caused by Tenants.

24. **PETS.** No pets are allowed. Tenants may keep _____. Tenants shall not keep or allow any other animals (other than service animals) onto the premises. Any deposit required by Landlord on account of allowing pets is included in the security deposit.

25. **WAIVER OF BREACH.** No waiver of any breach of this lease on any one occasion shall be construed to operate as a general waiver of another breach on a subsequent occasion. If any breach occurs and is later settled by the parties, this lease shall continue to bind the parties as it is written.

26. **JOINT AND SEVERAL LIABILITY.** All Tenants shall be jointly and severally liable for all Tenant obligations (rent, damages, and other). (The Landlord may collect the entire amount due from any Tenant, no matter which Tenant caused the damages or failed to pay their share of the rent.)

27. **INCORPORATION & MODIFICATION.** This Lease is the complete and entire agreement between the parties and all prior agreements and understandings, both written and oral, have been incorporated herein. It may only be modified or amended by executing another written document signed by all parties or their authorized agents.

28. **SEVERABILITY.** The provisions of this lease are severable, and if any part of the Lease is held illegal, invalid, or inapplicable to any person or circumstance, the remainder of this lease shall remain in effect.

29. **GUARANTORS.** The Guarantors hereby unconditionally guarantee payment to Landlord all amounts due or that become due from Tenants to Landlord under this lease.

30. **CONDITION.** This lease is conditional on being signed by all parties named on page 1.

We, the undersigned, hereby represent that we have read this entire lease and agree to be bound by its terms and conditions.

Landlord Signature: *William A Caplan*    Date: 6 17 11

Tenants: *[signature]*    Date: 6-17-11

## NOTICE OF DEFAULT FOR FAILURE TO PAY RENT

TO: NAME: Lois A. Yankah, 251 Rocketts Way, #208, Richmond, VA 23231

FROM (LANDLORD): William A. Caplan, c/o Caudle and Caudle, PC, 3123 W. Broad St., Richmond, VA 23230

PLEASE TAKE NOTICE that you are justly indebted to the LANDLORD named above for the itemized charges shown below in connection with the rental of the following PREMISES: 251 Rocketts Way, #208, Richmond, VA 23231

### ITEMIZED CHARGES

| | |
|---|---|
| $3150.00 | Rent for August, September & October, 2011 @ $1050.00/mo. |
| $ 315.00 | Late Fees for August, September & October, 2011 @ $$187.50 |
| $ 866.25 | Attorney's Fees per lease [25% x $3465.00] |
| $4331.25 | TOTAL DUE LANDLORD AS OF 10/10/11 |



In accordance with the terms of your lease, you are liable for attorney's fees and court costs. In accordance with Section 55-225 of the Code of Virginia (1950), as amended, your LANDLORD hereby requires and demands possession of the PREMISES described above or payment of the TOTAL DUE LANDLORD shown above within five days. PAYMENT MUST BE MADE TO CAUDLE AND CAUDLE, PC, 3123 WEST BROAD STREET, RICHMOND, VA 23230. ALL PAYMENTS MUST BE MADE BY CERTIFIED CHECK, CASHIER'S CHECK, CASH OR MONEY ORDER. POSTMARKS WILL NOT BE CONSIDERED. ANY CHECK OR MONEY ORDER SHOULD BE MADE PAYABLE TO "CAUDLE AND CAUDLE, P.C."

### PERSONAL CHECKS WILL NOT BE ACCEPTED

YOU MAY NOT APPLY SECURITY DEPOSITS TO AMOUNTS DUE PURSUANT TO THIS NOTICE. In addition, if not paid within five (5) days, your LANDLORD has the right to terminate your lease and regain possession of your apartment. If your lease is terminated and you are evicted, Virginia law gives the LANDLORD a claim for damages for breach of the lease which may include rent for the entire balance of your lease term.

I hereby certify that a true copy of the foregoing notice was mailed first class postage prepaid to the tenant above at the addresses shown above on the following date: October 10, 2011.

_____
WILLIAM A. CAPLAN, LANDLORD



# Henrico County General District

## Civil Case Details

### Case Information

| Case Number: | GV11023324-00 | File Date: | 09/22/2011 |
|---|---|---|---|
| Case Type: | Unlawful Detainer | Debt Type: | |

### Plaintiff Information

| Name | DBA/TA | Address | Judgment | Attorney |
|---|---|---|---|---|
| CAPLAN, WILLIAM A | | | Plaintiff | CAUDLE & CAUDLE |

### Defendant Information

| Name | DBA/TA | Address | Judgment | Attorney |
|---|---|---|---|---|
| YANKAH, LOIS A | | RICHMOND VA 23231 | Plaintiff | |

### Hearing Information

| Date | Time | Result | Hearing Type | Courtroom |
|---|---|---|---|---|
| 10/17/2011 | 10:00 AM | Continued | Civil Hearing | 1 |
| 10/24/2011 | 11:00 AM | Judgment | Civil Contested Hearing | 1 |

### Service/Process

### Reports

### Judgment Information

| Judgment: Plaintiff | Costs: $53.44 | Attorney Fees: 866.25 |
|---|---|---|
| Principal Amount: $2,100.00 | Other Amount: $389.00 | Interest Award: 6 % FROM DOJ |
| Possession: Possession | Writ Issued Date: | Homestead Exemption Waived: |
| Is Judgment Satisfied: | Date Satisfaction Filed: | Other Awarded: |
| Further Case Information: DEF. TO PUT AUGUST RENT INTO ESCROW BEFORE 10-24 | | |

### Garnishment Information

### Appeal Information

| Appeal Date: | Appealed By: |
|---|---|

Sidebar: Henrico County General | Name Search | Case Number Search | Hearing Date Search | Service/Process Search | Name Search | Case Number Search | Hearing Date Search | Service/Process Search

Home | Virginia's Court System | Online Services | Case Status and Information | Court Administration | Directories | Forms | Judicial Branch Agencies | Programs

Build #: 5.0.15



PLAINTIFF'S EXHIBIT E