UNITED STATES BANKRUPTCY COURT
Eastern District of Virginia
Richmond Division

In re:

LOIS A. YANKAH,                                    Case No. 12-35627-KLP
                                                   Chapter 7
             Debtor.

## MEMORANDUM OPINION

This matter is before the Court on the "Motion for Violation of Automatic Stay and Creditor Misconduct" filed by the debtor, Lois A. Yankah, against Clifford J. Mack, her former landlord.  Numerous hearings, evidentiary and otherwise, have been held since the filing of the motion.  In addition, two related orders of this Court have been appealed to, and affirmed by, the District Court.  The Court conducted a final evidentiary hearing on October 30, 2014, and the motion is now ripe for final disposition.  This Memorandum Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Federal Rule of Bankruptcy Procedure 7052.

## Jurisdiction

The Court has jurisdiction in this matter pursuant to 28 U.S.C. §§ 157(b)(1) and 1334(b).  Venue exists pursuant to 28 U.S.C. §§ 1408 and 1409(a).  This is a core proceeding under 28 U.S.C. § 157(b)(1) and (2). *Budget Service Co. v. Better Homes of Virginia, Inc.*, 804 F.2d 289, 292 (4th Cir. 1986).

## Procedural History

Lois A. Yankah ("Yankah") filed a *pro se* chapter 13 bankruptcy petition on September 27, 2012. The case was converted to chapter 7 on April 9, 2013. On June 3, 2013, Yankah filed her "Motion for Violation of Automatic Stay and Creditor Misconduct" (the "Stay Violation Motion") against Clifford J. Mack ("Mack"), alleging that Mack willfully violated the automatic stay of Bankruptcy Code § 362(a), 11 U.S.C. § 362(a).[1] Yankah sought damages resulting from the setoff of her rental security deposit by Mack and from Mack's refusal to allow her to recover her personal property from premises she had leased from him.

The initial hearing on the Stay Violation Motion was held on June 19, 2013. At that time, Mack's counsel appeared and acknowledged that Mack was in possession of some of Yankah's property, that Yankah had previously been given the opportunity to recover her property, and that Mack would allow her an additional opportunity to do so on June 29, 2013. The Court continued the hearing until July 23, 2013, to allow Yankah to recover her property. At the July 23 hearing, Yankah was to have the opportunity to present evidence regarding any property she did not recover from Mack. The Court followed up the hearing with a letter to the parties advising them of the Court's expectation that on July 23 it would hear evidence regarding the eviction and the disposition of Yankah's personal property, and further

---

[1] Unless otherwise noted, all sectional references herein are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

advising that Yankah should be prepared to prove her damages through admissible evidence.

Both parties appeared at the July 23 hearing.  During the course of this hearing, Yankah presented little or no specific evidence of the items of personal property that had not been recovered but merely proffered a previously signed affidavit in which she summarily stated that her damages totaled $50,000.00.  At the conclusion of the hearing, the Court did not make a specific ruling but stated to the parties that Yankah had not proven any damages from the loss of her personal property.

On August 1, 2013, the Court received from Yankah a letter indicating that as a *pro se* litigant she did not understand what was required to prove damages and requesting another opportunity to provide evidence of her damages.  Yankah attached proposed exhibits as to her damages to that letter.  On August 30, the Court entered an order (the "August Order") to the effect that the Court considered Yankah's August 1 letter to be a motion for reconsideration of the Court's oral statement at the July 23 hearing that Yankah had proven no damages.  The Court granted Yankah's motion to reconsider and scheduled another evidentiary hearing for September 12, 2013, to give Yankah an opportunity to present evidence limited to her damages from loss of personal property caused by Mack's alleged stay

violation.  The August Order also acknowledged that Mack had not yet been

given an opportunity to present his side of the case.[2]

On September 9, 2013, Mack filed a motion to reconsider the August

Order, which was denied orally by the Court on September 12.  Mack

immediately noted his intention to appeal the Court's denial of his motion to

reconsider, and the Court indicated that it would continue further

proceedings generally in order to allow Mack to pursue an appeal to the

District Court.  The Court's denial of Mack's motion to reconsider the August

Order was memorialized in an amended order entered on September 18, 2013

(the "September Order").  On September 23, 2013, Mack filed a notice of

appeal from the September Order.

On September 20, 2013, the Court entered another order in connection

with the July 23 evidentiary hearing.  That order included factual findings

along with a determination that Mack had willfully violated the automatic

stay by setting off the security deposit while Yankah's bankruptcy case was

pending.  The Court deferred a ruling on Yankah's damages resulting from

the stay violation, indicating that the issue would perhaps be considered at

the same time as a hearing on damages arising from Mack's alleged

disposition of Yankah's personal effects.

On July 25, 2014, the U.S. District Court for the Eastern District of

Virginia affirmed the August Order and the September Order and dismissed

---

[2] The August Order did not admit the items attached to Yankah's August 1 letter
into evidence but merely set a hearing at which Yankah could present and request admission
of additional evidence of her damages.

Mack's appeal.[3]  Mack did not appeal the District Court's order.  As a result

of this ruling, this Court was now free to hold a further evidentiary hearing

on the Stay Violation Motion, as contemplated in the August Order.

On August 6, 2014, Mack filed a motion seeking that the Court apply

the doctrine of collateral estoppel to limit Yankah's claim to the $300 of

household goods she listed in her bankruptcy petition as her only physical

personal property (the "Estoppel Motion").  He simultaneously filed a Rule

9011 motion for sanctions (the "Sanctions Motion") and scheduled both

motions to be heard on September 2.  On August 14, the Court notified the

parties of its intent to conduct a status conference on Yankah's Stay Violation

Motion on September 2 as well.  On August 29, 2014, the Court received a

letter from Yankah acknowledging her receipt of the notice of the hearing

scheduled for September 2.  In her letter, Yankah asked the Court to disclose

the purpose of the hearing to help her "adequately prepare for court . . . ."

On September 2, the Court conducted the scheduled status hearing on

Yankah's Stay Violation Motion[4] as well as hearings on Mack's Estoppel

Motion and Sanctions Motion.  Present at the hearings were Mack and his

attorney.  Yankah did not appear.  The Court announced that a final

evidentiary hearing on the Stay Violation Motion would be held on October

30, 2014.  The Court announced that the Estoppel Motion and Sanctions

---

[3] *Mack v. Yankah (In re Yankah),* 514 B.R. 159 (E.D. Va. 2014).

[4] On December 31, 2013, this case was reassigned to the undersigned on the occasion
of the retirement of the Honorable Douglas O. Tice, Jr.  Judge Tice presided over this case
from its original filing date on September 27, 2012, until its reassignment.

Motion would also be heard at that time.  On September 5, 2014, the Court entered an order specifically providing that in accordance with the August Order and the Court's September 20, 2013, order, at the final hearing on October 30, Yankah would have an opportunity to present evidence limited to 1) damages from loss of personal property caused by Mack's alleged willful violation of the automatic stay and 2) damages that resulted from Mack's improper setoff of Yankah's security deposit.  The order also provided that Mack would be given the opportunity to present his defense to the Stay Violation Motion and to argue the Estoppel Motion and Sanctions Motion. The Court further ordered the parties to complete discovery no later than October 20.  This order was entered on the docket on September 5 and served on Yankah on September 7.

In accordance with the Court's order of September 5, 2014, Mack served interrogatories, requests for admission and request for production of documents on Yankah.  Mack filed a motion for sanctions on October 24, 2014 ("Discovery Sanctions Motion"), based upon Yankah's alleged failure to respond to the discovery.  On the same date, Mack also filed a motion to approve the use of a *de bene esse* deposition at the October 30 hearing.  Mack requested that the Discovery Sanctions Motion and the *de benne esse* motion be heard on an expedited basis at the already-scheduled October 30 evidentiary hearing (the "Motions to Expedite").  Yankah did not oppose the request for the expedited hearing.

On October 30, the Court held the scheduled evidentiary hearing. Yankah failed to appear and, consequently, failed to submit any further evidence. Mack's counsel appeared and offered evidence in the form of Mack's *de bene esse* deposition. The Court granted the Motions to Expedite and Mack's motion to approve the use of the *de bene esse* deposition, denied Mack's Estoppel Motion and Sanctions Motion, and took under advisement Yankah's Stay Violation Motion and Mack's Discovery Sanctions Motion.

On November 5, six days after the conclusion of the October 30 evidentiary hearing, Yankah filed a document with the Court entitled "Request To Be Excused From Court" noting an unspecified "family emergency." Yankah did not seek a rescheduling of the October 30 hearing; in fact, in her request to be excused, she represented that even if she had been able to attend the hearing, she "had no new evidence" to present to the Court. The request to be excused referred to various documents which had "already been presented to and accepted by the court" purportedly representing evidence of the damages she incurred in connection with her claims against Mack.

## Facts

On June 4, 2012, before filing her bankruptcy petition, Yankah entered into a lease agreement with Mack for an apartment located at 251 Rocketts Way # 304 in Henrico County, Virginia. After making only one month's payment of rent to Mack, Yankah filed her chapter 13 bankruptcy. On

December 17, 2012, the Court entered an order granting Mack relief from the automatic stay of the Bankruptcy Code, 11 U.S.C. § 362, to enable him to proceed in state court to enforce his lease agreement with Yankah.  Mack subsequently obtained lawful possession of the premises and Yankah was evicted.  Mack took possession of the apartment, along with items of Yankah's personal property, on May 2, 2013.  Some of the items left by Yankah, including clothing, furniture, papers and textbooks, were removed and either retained or disposed of by Mack.  Mack has also acknowledged setting off Yankah's security deposit in the amount of $1155 against unpaid rent.  He did so while Yankah's case was pending and with actual knowledge of her bankruptcy.[5]

In Schedule B of her bankruptcy schedules, Yankah listed the following items: cash in the amount of $500; a checking account containing $32.70; a security deposit for rent in the amount of $1155; household goods (kitchen utensils, decorative items, linens and small appliances, bedroom set) valued at $300; and a judgment valued at $3444.  Yankah claimed all of these items to be exempt in Schedule C of her schedules.

On August 26, 2013, the Chapter 7 trustee filed a report of no distribution in Yankah's case.  Yankah received a discharge on June 19, 2014.

---

[5] Mack was an active participant in the bankruptcy case and does not dispute deliberately effectuating the setoff while Yankah's case was pending.

## Conclusions of Law

The automatic stay imposed by § 362 of the Bankruptcy Code is intended to preserve the bankruptcy estate and "to shield the debtor from financial pressure during the pendency of the bankruptcy proceeding." *Winters ex rel. McMahon v. George Mason Bank*, 94 F.3d 130, 133 (4th Cir. 1996). It accomplishes this by prohibiting the "commencement or continuation . . . of a judicial, administrative, or other action or proceeding against the debtor . . . or to recover a claim against the debtor that arose before the commencement of the case." 11 U.S.C. § 362(a)(1). It also stays the "enforcement, against the debtor or against property of the estate, of a judgment obtained before the commencement of the case" 11 U.S.C. § 362(a)(2), or "any act to obtain possession of property of the estate . . . or to exercise control over property of the estate." 11 U.S.C. § 362(a)(3).

Section 362(k)(1)[6] provides that "an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." To establish an entitlement to damages from a creditor pursuant to this section, a debtor must show that the creditor committed an act that violated the automatic stay, that the act was willful

---

[6] In 2005, former § 362(h) of the Bankruptcy Code was amended by the Bankruptcy Abuse Prevention and Consumer Protection Act, Pub. L. No. 109–8, 119 Stat. 23 (2005), and designated as § 362(k). Since no substantive amendments were made, pre-BAPCPA case law interpreting § 362(h) continues to have relevance and precedential value in interpreting § 362(k).

and that the debtor suffered damages as a result of the act. *In re Seaton*, 462

B.R. 582, 592 (Bankr. E.D. Va. 2011).

A willful violation occurs when the creditor knew or is charged with

knowledge of the stay and commits an intentional act in violation of the stay.

*Id.* at 592-93.  A willful violation does not require a specific intent to violate

the stay but only to deliberately undertake the act that violates the stay.

*Bradley v. Fina (In re Fina)*, 550 F. App'x 150, 154 (4th Cir. 2014); *Scott v.*

*Wells Fargo Home Mortg., Inc.*, 326 F. Supp. 2d 709, 718 (E.D. Va.), *aff'd sub*

*nom. Scott v. Wells Fargo & Co.*, 67 F. App'x 238 (4th Cir. 2003).  Willfulness

in the context of § 362(k) must be demonstrated by clear and convincing

evidence.  *Skillforce, Inc., v. Hafer,* 509 B.R. 523, 529 (E.D. Va. 2014); *In re*

*Sheets*, No. 12-31723-KLP, 2014 WL 4831339, at *3 (Bankr. E.D. Va. Sept.

29, 2014)

This Court has already found that Mack violated the automatic stay by

setting off the $1155 lease deposit.  Judge Tice, relying on the evidence

presented at the July 23 hearing, found that "[Mack], having knowledge of

debtor's bankruptcy, willfully violated the automatic stay by effecting the

setoff while debtor's case was pending." (Order of Sept. 20, 2013, Docket No.

113, page 3).[7]  As a consequence of Yankah's failure to adequately address

her damages and to specify which damages arose from the offset of the

---

[7] The Findings of Fact and Conclusions of Law set forth by Judge Tice in his
September 20, 2013, order are incorporated herein and made a part of this memorandum
opinion.  The Court specifically ratifies the conclusion that a setoff right is subject to the
automatic stay of § 362(a)(7).

security deposit and which arose from the loss of her personal effects, his

ruling on Yankah's damages was deferred pending a further hearing. (*See*

*also* August Order, Docket No. 95, pages 2-3).

Turning to Yankah's claim that Mack violated § 362 by disposing of

her personal property, the Court notes the case of *In re Seaton*, whose facts

are strikingly similar to the present case. In that case, a former tenant filed

a motion for contempt, seeking sanctions against an evicting landlord for

violation of the automatic stay of § 362. In *Seaton*, the landlord had been

granted limited relief from the stay in order to regain possession of the leased

premises and, in conjunction with obtaining possession of the premises,

removed and disposed of items of personal property of the debtors. Judge St.

John found that that the actions of the landlord violated the automatic stay

and cited *B. Cohen & Sons Caterers, Inc. v. New Plan Realty Trust (In re B.*

*Cohen & Sons Caterers, Inc.),* 97 B.R. 808 (Bankr. E.D. Pa.), *aff'd in relevant*

*part,* 108 B.R. 482 (E.D. Pa. 1989), *aff'd*, 944 F.2d 896 (3d Cir. 1991), in which

a Pennsylvania bankruptcy court found that similar actions by an evicting

landlord were "violative of the residuum of the automatic stay." *Id*. at 814.

Judge St. John observed that the Chapter 7 trustee had not abandoned the

personal property in question and concluded that the landlord's act was

therefore a direct violation of § 362(a)(3), which prohibits "any act to take

possession of property of the estate."

11

Similarly, the stay relief obtained by Mack in this case did not
authorize him to take possession and dispose of Yankah's personal property.
The Chapter 7 trustee had not at that time filed his report of no distribution
or otherwise abandoned the property.  Thus, any property taken by Mack was
property of the bankruptcy estate, *see* 11 U.S.C. § 554(d), and his removal
and disposition of the property constituted a willful violation of the automatic
stay.[8]

Having determined that Mack violated the automatic stay, both in
setting off the security deposit against unpaid rent and by taking possession
of property of the bankruptcy estate, the Court must consider Yankah's
damages.  Section 362(k) provides that "[e]xcept as provided in paragraph (2),
an individual injured by any willful violation of a stay provided by this
section *shall* recover actual damages, including costs and attorneys' fees, and,
in appropriate circumstances, may recover punitive damages." (emphasis
added).  Therefore, once a determination is made that a willful violation of
the automatic stay has occurred, an award of actual damages is mandatory.
*Davis v. I.R.S.*, 136 B.R. 414, 423 n.20 (E.D. Va. 1992); *In re Gallo*, No. 07-
10958C-13G, 2012 WL 3930320, at * 3 (Bankr. M.D.N.C. Sept. 10, 2012).  The
debtor bears the burden of proving actual damages by a preponderance of the
evidence.  *Skillforce, Inc., v. Hafer,* 509 B.R. at 529; *In re Seaton*, 462 B.R. at

---

[8]  In his response to Yankah's Stay Violation Motion, Mack acknowledged removing
"over 30 bags of trash, debris, and abandoned property on May 11, 2013.  Some items were
donated to the Salvation Army and some property remains in the leased premises." (Docket
No. 60, page 2, ¶ 5).  In his *de bene esse* deposition (Docket No. 190, Exhibit B, pages 5-6),
Mack admitted removing furniture and a bedroom set.

595; *In re Sheets*, 2014 WL 4831339, at *3. Any award of damages must be based on concrete, non-speculative evidence. *In re Seaton,* 462 B.R. at 595 (citing *Rawles v. Wych (In re Rawles)*, Adv. No. 08–00555, 2009 WL 2924005, at *2 (Bankr. D. Md. June 18, 2009)).

Yankah claims that she is entitled to both compensatory and punitive damages. In the Stay Violation Motion, she requests the return of the $1155 security deposit as well as all of the personal property disposed of by Mack. She also seeks reimbursement for out of pocket expenses required to buy new school supplies, personal items and clothing, and she also seeks damages for time lost from her studies and professional life. She claims that she "suffered interruption, annoyance, and continuing anxiety" (Stay Violation Motion, Docket No. 55, p. 5) that affected her academic performance and grades.

Despite her allegations of damage, Yankah has presented a paucity of evidence to support her claim. Previous orders of this Court and the District Court have addressed the lack of sufficient evidence to determine Yankah's damages. The Court's August Order indicates that Yankah had not proved any damages from the loss of personal property. In its September 20 order, the Court noted its inability to make a final ruling on damages without additional information.[9] Addressing Mack's appeal of the September Order, the District Court found that at the July 23, 2013, hearing, "Yankah failed to

---

[9] In an amendment to the Stay Violation Motion, filed on June 18, 2013 (Docket No. 63), Yankah summarily listed damages in excess of $50,000 attributable to the loss of personal property without providing any information concerning the fair market value of specific items.

13

present specific, admissible evidence of the personal property not recovered

from Mack.  Instead, she submitted only an affidavit summarily stating

$50,000 in damages." *Mack v. Yankah (In re Yankah)*, 514 B.R. 159, 162

(E.D. Va. 2014).  The District Court further commented that Yankah had

"indisputably failed to present competent evidence of her damages . . . ." *Id.*

at 166-67.

Yankah has been afforded numerous opportunities to offer additional

evidence of her damages.  The Court gave Yankah specific instructions to

appear on July 23, 2013, prepared to present evidence to support her claim.

She appeared at the hearing but failed to present evidence of her alleged

damages.  A week later she submitted to the Court documents presumably

intended to represent additional evidence.  Even though this potential

evidence was not presented prior to the conclusion of the July 23 hearing, the

Court gave Yankah the opportunity to appear and present her evidence at a

future hearing.  After Mack's unsuccessful appeal of the Court's decision to

permit additional evidence to be presented, the Court scheduled an

evidentiary hearing for that purpose.  The scheduling order issued prior to

the hearing specifically stated that Yankah would have the opportunity to

present evidence of her damages.  However, Yankah failed to appear at the

scheduled evidentiary hearing.[10]   Since Yankah has failed to take advantage

---

[10]  Yankah's Request to be Excused from Court (Docket No. 206), received six days
after the final evidentiary hearing on October 30, suggests that she assumed that the
documents submitted with her August 1 letter had been "accepted" or otherwise admitted as
evidence and that there was no need for her to do anything further in order to establish

14

of her opportunities to present evidence of her damages, the Court must now

dispose of this matter on the record before it.[11]

The parties agree that the amount of the security deposit improperly

set off by Mack is $1155.  The Court finds that Yankah is entitled to recover

this amount as actual damages for Mack's violation of the automatic stay of

§ 362(a)(7).

The vast majority of Yankah's damage claim involves the alleged loss

of her personal property.  In order to recover for these items, she must prove

the market value of the goods at the time of their conversion by the landlord.

*In re Seaton,* 462 B.R. at 598.  The evidence submitted by Yankah falls far

short of providing a basis for an award of actual damages for the loss of

personal property; in fact, she has provided the Court with no evidence

---

adequate proof of her damages.  If that is the case, then her assumption demonstrates that
either she did not understand or chose to ignore numerous orders and notices she received.
Yankah's letter of August 29, 2014 (Docket No. 182), requested that the Court disclose the
purpose of its scheduling additional hearings "to help . . . [her] adequately prepare for court."
The September 5 scheduling order did just that.

[11] The Federal Rules of Evidence are applicable to every litigant, including those who
choose to proceed without the assistance of an attorney.  Documents must be admitted
through qualified witnesses, and opposing parties must be afforded an opportunity to cross-
examine those witnesses.  The process used by Yankah to present her evidence of damages
falls far short of the legal requirements necessary to have the documents admitted into
evidence and considered by the Court.  Simply put, Yankah has offered nothing to
substantiate her claim beyond the scant evidence presented on July 23.  While a certain
degree of flexibility may be afforded an unrepresented litigant, all parties, whether
represented or not, are entitled to due process and adherence to evidentiary safeguards.  The
Court finds that Yankah's *pro se* status has been adequately accommodated. As pointed out
by the District Court in another appellate opinion docketed in this bankruptcy case,
"[t]hough it is the general practice of the Court to construe pro se complaints liberally and
afford leniency wherever it is possible, 'the grant of leniency is not without its limitations.'
*In re Loy*, 448 B.R. 420,437 (Bankr. E.D. Va. 2011).  The Court will not 'allow pro se litigants
to deviate completely from the rules of procedure or court-imposed deadlines.' *Id*. at 437."
(*Yankah v. T-Mobile, Inc*., Case No. 3:14-CV-00191-HEH, slip op. at 4 (E.D. Va. June 20,
2014) (docketed in the instant case at No. 173).

whatsoever of such damages. [12]  Therefore, the Court is unable to award her

damages for loss of personal property.

Likewise, Yankah has failed to offer concrete evidence of her alleged

intangible damages, including emotional distress or setbacks in her education

or professional career.  With only generalized complaints asserted by

Yankah, the Court is unable to fix and award damages for these alleged

losses.  *See In re Seaton,* 462 B.R. at 601-603.

Yankah has sought an award of punitive damages, which ordinarily

requires a showing of egregious or vindictive conduct.  *Id.* at 604.  She has

failed to present any evidence of egregious or vindictive conduct.  Accordingly,

the Court declines to award punitive damages.[13]

Yankah has also sought an award of attorney's fees and costs.  While

§ 362(k) contemplates awarding attorney's fees and costs, Yankah is

unrepresented in this matter and has incurred no attorney's fees.

Furthermore, Yankah has offered no evidence to support an award of costs

incurred.  Therefore, Yankah is not entitled to an award of attorney's fees

and costs.

---

[12]  The Court in *Seaton* recognized the "special dilemma" existing when the damage
claimed from a stay violation is the loss of household items, noting the lack of established
valuation guides such as those used to value motor vehicles.  462 B.R. at 595.  In such
instances the Court suggested considering the debtor's schedules as an "important starting
point in determining fair market value."  *Id.* at 599, n.4.  However, in that case, the debtors
presented evidence as to their damages.  Here, Yankah has provided no such evidence nor
has she offered any explanation for the substantial discrepancies between her large claimed
losses and the minimal values set forth in her schedules.

[13]  To the extent that the Stay Violation Motion might be construed to contain a
request for an award of damages for emotional distress, the Court denies such a request, as
no such damages have been proven.

16

Having addressed the Stay Violation Motion, the Court now turns to

the remaining outstanding motions.  In the Estoppel Motion, Mack points out

that while Yankah's schedules list only $300 worth of household furnishings

owned at the time of her bankruptcy filing, she has requested an award of

$50,000 for loss of such personal property.  Mack argues that Yankah should

be limited to the values set forth in her bankruptcy schedules.  Since Yankah

has presented no evidence of damages with respect to the loss of personal

property, the Court finds that the Estoppel Motion is moot, and accordingly it

is denied.

In his Sanctions Motion, Mack seeks an award of sanctions based upon

Bankruptcy Rule 9011, Fed. R. Bankr. P. 9011.[14]  The Court finds that

Yankah did not violate the strictures of Rule 9011, but only aggressively

advocated her position and asserted her rights.  While she may not have been

as sophisticated in her representation of herself as an attorney might have

---

[14]  Rule 9011(b) states that:
By presenting to the court (whether by signing, filing, submitting, or later advocating) a petition, pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
(1) it is not being presented for any improper purpose, such as to harass or to cause unnecessary delay or needless increase in the cost of litigation;
(2) the claims, defenses, and other legal contentions therein are warranted by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;
(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and
(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.
Fed. R. Bankr. P. 9011(b).

been, the Court does not find that she violated Rule 9011 and therefore

denies the Sanctions Motion.

Finally, the Court has considered the Discovery Sanctions Motion.  The

failure of Yankah to respond to Mack's discovery requests violates

Bankruptcy Rule 7037, which provides that a court may sanction a party who

fails to "obey an order to provide or permit discovery . . . ." Fed. R. Bankr. P.

7037, incorporating Fed. R. Civ. P. 37(b)(2)(A).  The Court's September 5

scheduling order allowed Mack to engage in discovery, and Yankah's failure

to respond to the propounded discovery was in violation thereof.  Rule 37

prescribes sanctions that might be imposed against such a noncompliant

party, including

> (i)    directing that the matters embraced in the order or other designated facts be taken as established for purposes of the action, as the prevailing party claims;
> (ii)   prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence;
> (iii)  striking pleadings in whole or in part;
> (iv)   staying further proceedings until the order is obeyed;
> (v)    dismissing the action or proceeding in whole or in part;
> (vi)   rendering a default judgment against the disobedient party; or
> (vii)  treating as contempt of court the failure to obey any order except an order to submit to a physical or mental examination.

*Id.*  In light of the history of this case, the Court finds that the appropriate

sanction in this instance is to bar Yankah from presenting any further

evidence in support of the Stay Violation Motion if that evidence should have

been disclosed by Yankah in response to the discovery propounded to her by

Mack.

A separate order shall issue.

Dated:  March 19, 2015                     /s/ Keith L. Phillips
                                        United States Bankruptcy Judge


Copies to:                              Entered on Docket:  March 20, 2015

Lois A. Yankah
P. O. Box 85
Richmond, VA  23218

Robert A. Canfield
Canfield, Baer, & Heller, LLP
2201 Libbie Ave., Suite 200
Richmond, VA  23230

Bruce H. Matson
LeClair Ryan, A Professional Corporation
Riverfront Plaza, East Tower
951 East Byrd Street
P.O. Box 2499
Richmond, VA  23218-2499

Robert B. Van Arsdale
Office of the U. S. Trustee
701 E. Broad St., Suite 4304
Richmond, VA  23219